## CLAYBROOK

*v.*

## SCOTT, &c.

(*Special Court of Appeals of Virginia, July, 1878.*)

[Virginia Law Journal, 1878, p. 438.]

**Bonds—Co-sureties—Liability for Contribution—Case at Bar.***

C., as the security of H. & A., executed to S. a bond for $1,394.74, payable on demand, and S. assigned the bond to J., with the following agreement in writing: ''February 11th, 1861—I have this day passed to J. M. Smith the bond of Carey J. Hall and others, amounting to $1,394.74, and due January 1st, 1861, for which I bind myself and my heirs to said Smith as one of the securities. Witness my hand and seal this the date as above written.—H. B. Scott.'' The principals in the bond becoming insolvent, and C. having to pay the debt, he filed his bill against S. for contribution with him as a co-security, under the alleged terms of the above agreement made at the time of assignment: *held*: S. is not liable for contribution as a co-surety.

**Same—Same—Same.**

The right to contribution is not affected by the co-sureties being bound jointly or severally, or by the same or different instruments, or at the same or different times, or for the same or different amounts; except that when the amounts are different, a co-surety cannot be required to contribute beyond the sum for which he was bound—nor does it matter whether the co-sureties were aware of there being such.

**Same—Same—When Liable to Contribute.**

It is essential that they should be co-sureties for the same principal and for the same engagement.

---

*See foot-note to Robertson *v.* Trigg, 32 Gratt. 76 (Va. Rep. Anno.).

From the late district court of appeals of Fredericksburg.

*R. T. Daniel,* for the appellant.

*C. G. Griswold,* for the appellees.

The case is sufficiently stated in the headnotes and opinion.

BARTON, J., delivered the opinion of the court.

The appellant filed his bill in the circuit court for the Richmond county, alleging that, on the the 11th day of February, 1861, he had executed a bond, as the security of Carey J. Hall and A. J. Sydnor, the principals, to H. B. Scott for the sum of $1,394.74, payable on demand, with interest from the 1st day of January, 1861. That on the same day the said H. B. Scott assigned the said bond to J. M. Smith with the following engagement in writing : "February 11th, 1861, I have this day passed to J. M. Smith the bond of Carey J. Hall and others, amounting to $1,394.74, and due January 1st, 1861, for which I bind myself, my heirs to said Smith as one of the securities. Witness my hand and seal this the date as above written.

[Signed]                    "H. B. SCOTT."

It was alleged that this instrument was under seal, and also that it had been written on the same paper below the bond, and had been torn off, but the instrument itself showed that it was not under seal, and had been written on a separate paper. The bill further alleged that Sydnor, one of the principals, was wholly insolvent ; that Hall, the other principal, had been adjudged a bankrupt, and F. W. Claybrook appointed his assignee.; that J. M. Smith had died, and the bond, with the engagement of Scott, had passed into the hands of D. R. Hagner, who had intermarried with one of the distributees ; that to avoid a suit, the complainant

had paid the debt, amounting, on the 1st July, 1868, to the sum of $2,022.37.

He claimed that he became entitled, upon the payment of the bond, to every right in and over the instrument which the holder had, and to the use of all remedies for contribution against every one bound to the payment of that bond to Smith, and that Scott had become bound, as one of the securities of Sydnor and Hall, for its payment to Smith, and was therefore liable to the complainant for one-half of the amount paid by him. He prayed that Scott, Sydnor (the administrator of Smith), and F. W. Claybrook, assignee in bankruptcy of Hall, might be made defendants and required to answer the bill, and the said Scott to pay to the complainant one-half of the amount paid by him.

The bill was taken for confessed as to all of the defendants, except Scott, who filed his answer, admitting the formal statements of facts as above recited, except that he did not admit the alleged insolvency of Sydnor and required proof thereof, and averring, "that he, being largely indebted to the said James M. Smith by bond at the time of the execution of the said bond of Hall, Sydnor and Claybrook, proposed to said Smith to take said bond in payment of the bond which he then held of this respondent. That said Smith, for reasons unnecessary to be repeated here, declined to make the proposed exchange of bonds at first, but that being further urged to do so, he consented to receive the said bond of Hall, Sydnor and Claybrook, provided this respondent would bind himself in writing to be responsible for the amount of the bond if the said Smith should be unable at any time to make the same out of the said Hall, Sydnor and Claybrook. That this respondent agreed to give to the said Smith such written obligation, and therefore the said bond was transferred by this respondent to the said Smith, and, *eo instanti*, a paper written by the said Smith was signed

and delivered by this respondent to said Smith, as follows [copying the instrument given above] :    And this respondent avers that when he signed and delivered said paper to said Smith, neither he nor said Smith intended that he should be equally bound with said complainant for the payment of the original bond, but simply that if the said Hall, Sydnor and Claybrook failed to pay the said $1,394.74 specified in said bond, that then this respondent should pay it."

To this answer there was no replication, and the cause coming on to be heard upon bill and answer, a decree was entered against the defendant, Scott, for the sum of $1,011.18¾ with interest from the 1st July, 1868, that being one-half of the amount paid by the complainant.

From this decree the defendant obtained an appeal to the district court at Fredericksburg, and from the decree of the district court reversing the decree of the circuit court, the plaintiff has obtained an appeal, which is now to be considered.

The claim of one security for contribution from his co-securities, upon which the demand of the appellant is based, is the creature of the courts of equity.  "It is bottomed and fixed on general principles of justice, and does not spring from contract, though contract may qualify it." L. C. B. Eyre in Dearing v. Earl of Winchester, 2 Bos. & Pul. 270, 1 Lea. Ca. Eq.

The right to contribution is not affected by the co-securities being bound jointly or severally ; or by the same or different instruments ; or at the same or different times ; or for the same or different amounts, except that when the amounts are different, a co-security cannot be required to contribute beyond the sum for which he was bound, nor does it matter whether the co-securities were aware of their being such.

It is essential that they should be "co-securities for the same principal and for the same engagement."

When such is the case, and one of the co-securities had paid the debt, his right to contribution becomes absolute, and this upon a principle of natural justice, that when all are equally bound, the burden should be borne not by one alone, but by all equally. The right to contribution is therefore stated to depend upon the principles of equity, and not upon contract, except as it may be so represented upon the implied knowledge of those principles; and it was upon the implied assumpsit then arising that Lord Eldon in Craythorne v. Swinburne, 14th Vesy 164, justified the jurisdiction of courts of law upon this subject.

In ascertaining whether such co-securityship exists as to give the right to contribution, the court looks to the real transaction. The liability depends not on its form, but its essence, and parol evidence is admissible to show what the contract was, out of which the alleged liability to contribution arises—Lord Eldon in Craythorne v. Swinburne, 14th Vesy 170. Carr & Cabell, JJ. Harrison v. Lowe, 5 Leigh 418.

In the transaction between the appellee and J. M. Smith, there was no privity between the appellee and the appellant, no consideration passing between them, no agreement or understanding between them, no change in the liability of the appellant.

If he acquired any rights as against the appellee by that transaction, it can only be by reason of the appellee having become by the obligation he then assumed a co-security of the appellant.

We must, then, look to that transaction to ascertain the rights and liabilities of the parties to this. If the appellee, Scott, did, by that transaction, become a co-security with the appellant, Claybrook, for the principals, Hall and Syd-

nor, and for the same engagement, then the appellant is entitled to contribution from the appellee—otherwise not.

This is not the usual case of a controversy as to contribution between common friends of a principal, for whose benefit or in whose behalf they have bound themselves for some debt or engagement in which their pecuniary, if not sole, object was to become security. But is one in which it is claimed that the creditor, to whom all the debtors were equally bound, has, by the agreement of assignment, made with an assignee, at the time of the assignment, made himself the co-security of one of his debtors for the others as the principals.

The leading and primary object of the parties to the assignment must have been the assignment itself. There is nothing to suggest that any benefit or advantage to the appellant entered into the minds of the parties to the assignment. There was no reason why it should. It is plain why the assignee, Smith, might have desired to have the assignor, Scott, liable to him as a security for the debt, rather than as assignor of the debt. If Scott's liability was that of an assignor, the assignee, in order to preserve it, was required to proceed, without delay, to enforce his legal remedies against the debtors. The assignor was the guarantor of their solvency, and delay or laches on the part of the assignee would deprive him of any recourse against the assignor if he should fail to recover the debt from the original debtors. By taking from him an engagement to be liable as a security, or as if he were one of the securities, he relieved himself from the necessity of instituting suit at once and preserved the liability of Scott, with the right to claim of him that he should pay the debt, if at any time Smith, the assignee, should be unable, by due process of law, to make it out of the obligors to the bond.

The purpose and interest of Smith was, that the appellee,

1 Va Dec—21

Scott, should be liable to him as a security for the debt, for all the debtors together. It could have been no object to him to have Scott liable as a security for two of them only. He could not have desired that Hall and Sydnor should be made principals, and that the appellee, Scott, should be a co-security with the appellant, Claybrook, for them, rather than that Scott should be the security of the three, to him, principals—Hall, Sydnor and Claybrook. Such was the natural relations of the parties. · A change in them might cause some complication, but could not benefit him. To say the least, he could not have desired it, and it might have been a matter of indifference. But to the appellee, Scott, it was not a matter of indifference. By the one he was responsible only in case the debt could not be made out of any of the three obligors. All must prove insolvent before any liability could be imposed on him. By the other he was to become the co-security of one of his own debtors for the other two—to one-half of the very security he had that day taken, and this without any necessity or reason for the surrender.

The instrument is inartificially drawn and inaccurate in its statements. Looking to its terms, the parties to it, and their situation as to each other, it is by no means clear, that the construction contended for by the counsel for the appellant is its true legal construction, and that its fair interpretation is not in accordance with the real transaction between the parties to it. However that may be, the statement of the transaction and the contract between the appellee, Scott, and Smith, his assignee, as detailed in the answer of Scott, which, there being no replication, is to have its full weight as evidence, and is admissible to show what that contract was, leaves no doubt as to what was the real contract between them.

He states distinctly that Smith agreed to take the bond in

payment of a debt he then owed Smith, provided he, Scott, "would bind himself in writing to be responsible for the amount of the bond if the said Smith should be unable at any time to make the same out of the said Hall, Sydnor and Claybrook. That neither he nor the said Smith intended that he should be equally bound with said complainant (the appellant) for the payment of the original bond, but simply, that if the said Hall, Sydnor and Claybrook failed to pay the said $1,349.74, specified in said bond, that then this respondent (the appellee) should pay it."

There can be no mistake as to the meaning and intention of the parties, which constituted the contract between them. The appellant and appellee were not "co-securities for the same principals and for the same engagement." The principals were different and the engagements were different. Hall and Sydnor were the principals of Claybrook, and his engagement was, that if they did not pay, he would. Hall, Sydnor and Claybrook were the principals of the appellee, and his engagement was to pay if none of the three did.

If the construction contended for by the appellant be the legal construction of the written agreement between the appellee, Scott, and Smith, his assignee, to hold the appellee liable to the appellant for contribution, because of an incautious expression used by him in an instrument to which the appellant was no party, of which he had no knowledge, which did not and could not change the responsibility which he had voluntary assumed, and which expression was not only not in accordance, but was in direct conflict with the meaning and intention of the parties to the instrument, would sacrifice substance to form and be subversive of those very principles of justice and equity upon which the rights of co-securities to contribution from each other is confessedly founded.

This view of the case renders it unnecessary to consider the effect of the failure to prove the insolvency of Sydnor and other questions suggested by the record.

WINGFIELD, P., and MCLAUGHLIN, J., concurred.

Decree of district court affirmed.